UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

    - v. -                                              :         15 Cr. 139 (LTS)

SAMUEL WALDMAN,
                      Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States of America

Patrick Egan
Assistant United States Attorney
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

      - v. -                            :        15 Cr. 139 (LTS)

SAMUEL WALDMAN,                   :

      Defendant.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SENTENCING MEMORANDUM

The Government respectfully submits the following memorandum in connection with the sentencing of the above-captioned defendant, currently scheduled for January 26, 2016 at 10:00 a.m., and in response to the defendant's sentencing memorandum ("Def. Mem"), which was filed under seal with the Court on December 2, 2015. For the reasons set for the below, the Government respectfully submits that an incarceratory sentence below the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 41 to 51 months' imprisonment followed by a significant period of supervised release would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing, including achieving just punishment for the defendant's crime, promoting respect for the law, protecting the public, and deterring this defendant and others similarly situated from committing similar crimes. 18 U.S.C. § 3553(a).

## BACKGROUND

### A.   *Offense Conduct*

Per the Presentence Investigation Report ("PSR"), the defendant was arrested as part of a broader operation by the Department of Homeland Security – Homeland Security Investigations ("HSI") aimed at identifying individuals who were sharing images of child pornography over the

-1-

internet via different peer-to-peer file sharing programs. (PSR ¶ 8). To conduct the investigation, HSI utilized forensic software that could scan the internet for computers that were connected using certain file-sharing programs and then determine if the computer contained known images of child pornography. If such images are found, the software would attempt to download those images from the host computer. (PSR ¶ 9).

On November 1, 2013, the HSI software found a computer connected to the internet (the "Host Computer") and using a particular file sharing program that had had what appeared to be images of child pornography. (Id.). The software was able to then download at least three videos from the Host Computer. (Id.). The videos contained images of very young children engaging in various sexual acts with adults. (PSR ¶¶ 10-12).

The agents identified the Internet Protocol Address ("IP Address") of the Host Computer and found that it was subscribed to by the defendant's wife at the defendant's home address (Criminal Complaint ("Compl.") ¶¶ 4-5). On March 5, 2014, the agents executed a search warrant at that location and found a laptop at the location (PSR ¶ 13). During the execution of the search warrant, the agents took a detailed statement from the defendant (Id.). During that statement, among other things, the defendant acknowledged that he used peer-to-peer software to download child pornography and had for a number of years. (Id.). The agents presented him with the files that they had downloaded from him and he acknowledged that he had owned those files at one time, but that he had since deleted them. (PSR ¶ 14). He also acknowledged that when he was on the peer-to-peer site, he was able to tell that people were downloading videos from him. (Id.). The defendant noted that he typically keeps the child pornography on his computer for a couple of days and the, using a program called C-Cleaner, he deletes it. (PSR ¶¶ 13, 16).

The defendant explained to agents that he started watching it as a change of pace and that the frequency built up over time, to a point where he was watching 30 videos per day when he was bored.  (PSR ¶ 17).  The defendant told the agents that the gratification for him comes in simply watching it. (PSR ¶ 15).  He even acknowledged watching shocking videos, such as a video of grown men raping a three year old boy (Id.).  While noting that pornography of any sort is taboo in his community, he made a point of telling the agents that he does not masturbate to the images as that is against his religion.  (Id.).

The defendant was arrested and charged by complaint with one count of distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(1) and (a)(2)(B).  He was later allowed to plead guilty to a one-count Information charging him with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  (PSR ¶ 2).  The latter charge does not carry a mandatory minimum sentence.

    **B.**    *The Guidelines*

        1.    Offense Level

The parties disagree with Probation's calculation of the relevant Guidelines range.  Per the plea agreement executed by the parties, the November 1, 2015 Guidelines Manual is applies to the offense charged in the Information.  The parties stipulate that, pursuant to U.S.S.G. § 2G2.2(a)(1), the base offense level is 18 and, as the material involved at least one pre-pubescent minor who had not yet attained the age of 12, a two-level enhancement is appropriate pursuant to U.S.S.G. § 2G2.2(b)(2).  The parties likewise stipulate that a (1) further two-level enhancement is appropriate as the offense involved the use of a computer; and (2) that an additional three-level enhancement applies as the offense involved at least 150 images but fewer than 300 images.  Given the defendant's prompt acceptance of responsibility, the parties believe

that a three-level reduction is appropriate. (PSR ¶ 32,33). Probation agrees with the parties calculation of the base offense level as well as the application of the enhancements described above. (PSR ¶¶ 22, 23, 25, 26).

Probation, however, believes that a further four-level enhancement applies, pursuant to U.S.S.G. § 2G2.2(b)(4) based on its conclusion that the material portrays sadistic or masochistic conduct or other depictions of violence. (PSR ¶ 24). The defendant objects to application of this enhancement. (PSR at 16; Def. Mem. at 13).

While Probation correctly sites the standard set forth by the Court of Appeals for guiding the Court's analysis of whether such an enhancement is appropriate, (PSR at 16 (citing *United States* v. *Freeman*, 578 F.3d 142 (2d Cir. 2009), they do not identify the act or even the video that makes the application of that enhancement appropriate. As *Freeman* makes clear, the standard is an objective one, and does not turn on the subjective intent of the actor in the video or interest of the viewer of the pornographic material. 578 F.3d at 146. It is not, however, categorical insofar as *Freeman* does not make the application of the enhancement automatic for material that depicts sexual acts with young children. Rather, the Court must determine that the image depicts a minor and that the specific activity depicted would have caused the minor pain. *Freeman*, 578 F.3d at 148. The Government has reviewed the videos, and while the images are certainly horrible and difficult to watch, the Government does not believe that they meet the threshold for applying the enhancement. Therefore, the Government, consistent with the plea agreement, believes that the appropriate offense level is 22.

       2.     Criminal History

The defendant has no known criminal history. (PSR ¶¶ 35-37). Therefore, his criminal history score is zero and his criminal history category is I. (PSR ¶ 39). At offense level 22, a

criminal history category of I results in an applicable Guidelines range of 41 to 51 months.  The defendant agrees that this is the appropriate range. (Def. Mem. at 13-14).  Probation, however, believes that the proper offense level is 26 which, at a criminal history category of I, results in a Guidelines range of 63 to 78 months' imprisonment.  (PSR ¶ 77).  While arguing that their calculation of the appropriate Guidelines range is correct, Probation recommends a sentence of 41 months' imprisonment – a sentence at the very low end of the range agreed to by the parties.

## DISCUSSION

### A.  *Applicable Law*

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.*

§ 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**B.** *Analysis*

While all cases involving child pornography are difficult, this one poses particular challenges. The crime is an extremely serious one. This defendant, however, does not appear to raise many of the community safety concerns that other consumers of child pornography might. Therefore, for the reasons discussed below, the Government respectfully submits that, while a period of incarceration is appropriate in order to reflect the seriousness of the offense and promote deterrence, a sentence below the Guidelines range with a lengthy term of post-release supervision would be sufficient, but no greater than necessary, to serve the legitimate aims of sentencing, as reflected in 18 U.S.C. § 3553(a).

*First,* crimes against children are some of the most serious offenses in our society. Sometimes it is difficult to understand where child pornography fits in the spectrum of these crimes as, more often than not, we do not have a live victim sitting in front of us to tell us about the horror of what they have endured. But as soon as one has the misfortune of viewing the images themselves, the seriousness is undeniable. Watching a video, such as those downloaded from this defendant, and realizing that every child depicted in it is a *real* child whose childhood –

-6-

and, indeed, life – have been inexorably altered by their participation in making of these videos makes the human impact all the more clear.  The defendant is wise to not try to minimize the nature of these videos (Def. Mem. at 13), but that ought not be enough to escape appropriate punishment for their possession.  The defendant does not produce child pornography and even his distribution of it can be described as passive.  However, that does not make the crime of possessing it a victimless one.  Consumers of child pornography drive a demand that fuels the industry that, in turn, feeds on additional child victims.  Even if one were to dismiss the effect of a single viewer on the level of demand as marginal or insignificant, it would not change the fact that the children who appear in these videos are effectively victimized every time some views what happened to them.  They can neither consent to the viewing nor control the loss of dignity they may feel any time someone sees them in what must be their most vulnerable moments.  This is what makes the crime so serious and why it merits punishment.

*Second,* considerations of deterrence – both general and specific – are also at play in this case.  The defendant represents that he ceased viewing child pornography voluntarily three months prior to his arrest.  The evidence in the case supports this contention.  Nevertheless, the defendant is someone who compared his crime to the infraction of jaywalking and told agents that he did not think it should be a crime to just watch child pornography.  (PSR ¶¶ 16, 17).  The defendant argues that the comparison to jaywalking was taken out of context.  Even if that were the case, *any* comparison is offensive and speaks to a serious misapprehension of the seriousness of the crime.  In considering the sentence in this case, the Government respectfully submits that  the Court should impose one that, in no uncertain terms, tells the defendant – and anyone else out there who may seek to view child pornography in the future – that possession of child pornography is indeed serious.

Against these considerations, the Court must weigh the nature and circumstances of the offense and the history and characteristics of the defendant.  First, the nature and circumstances of this defendant's experience with child pornography argue in favor of some measure of leniency.  His interest in the material, as stated by him and verified by the psychosexual analysis performed by Dr. Therese DeSantis, stem from his interest in pushing the restrictive social and moral boundaries imposed by his faith rather than a sexual interest in children.  Therefore, one of the primary concerns with defendant's in this kind of case – that their interest in viewing may grow into an actual desire to have sexual contact with children – is not present here.  This is particularly true where, as here, the defendant seems to have a significant degree of control over his impulses in this regard.  Frequently, in these kinds of cases, the defendant is found in possession of thousands of images of child pornography.  These extensive collections speak to the impulsive need to see more and to have ready access to the collection so it can be viewed by the offender whenever they want.  Here, the defendant erased the images he downloaded and, furthermore, was able to stop downloading *any* pornography at all on his own volition before an arrest may have provided the incentives to do so.  That level of control arguably mitigates some of the danger to the community – and to other children who appear in these videos – usually present in these cases.  These factors make Dr. DeSantis's conclusions that the defendant represents a "low-risk for reoffending," and that he is not a danger to the community (Def. Mem. at 10) both less surprising and more credible.

The Government also believes that the defendant's immediate and forthright cooperation with law enforcement, as well as the seriousness and discipline with which he has approached his post-arrest therapy, as further indications that the defendant understands that he has a problem and is prepared to address it.  The letter from his therapist describing the defendant as "motivated

for treatment" and as "demonstrating…a willingness to analyze his routines and relationships" (Def. Mem. at 12) are positive signs in this respect as well.

Finally, it is to the defendant's credit that he has maintained the support of his family and his community throughout the process. It is often the case that defendants are able to submit a handful of letters from loved ones in support of their request for a more lenient sentence. The defendant, however, has submitted numerous letters from family, friends, and those throughout the community all attesting to his qualities as a husband, a father, a neighbor and a leader in the community.

While all of this speaks well of the defendant, the nature of the offense and the inherent uncertainties attendant in predicting future dangerousness in this area make an extended period of supervision prudent.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that sentence that couples a sentence below the Guidelines range with a more lengthy period of supervision would serve the ends of justice as well as the statutory aims of sentencing.

Dated: New York, New York
       January 21, 2016

                                              Respectfully submitted,

                                              PREET BHARARA
                                              United States Attorney
                                              Southern District of New York

By:    /s/                                    .
       Patrick Egan
       Assistant United States Attorney
       (212) 637-2345